UNITED STATES BANKRUPTCY COURT
DISTRICT OF MAINE

In re:

NELSON CANAS and ANNEMARIE
POWELL-CANAS,

Debtors.

Chapter 13
Case No. 19-20409

**ORDER ON DEBTORS' MOTION TO
RECONSIDER THE DISMISSAL OF CASE**

Nelson Canas and Annemarie Powell-Canas (the "Debtors") move this Court to reconsider the dismissal of their Chapter 13 case (the "Motion") pursuant to Fed. R. Civ. P. 60, as made applicable by Fed. R. Bankr. P. 9024. The Court has reviewed its dismissal of the Debtors' case and denies the Motion for the reasons below.

**I. Facts.**

The salient facts are not disputed. The Debtors filed for bankruptcy relief under Chapter 13 over three years ago on August 13, 2019. Docket Entry ("D.E.") 1. The Chapter 13 trustee (the "Trustee") filed his first motion to dismiss the case on February 11, 2020 because, among other things, the Debtors were $300 delinquent on their plan payments and had failed to provide the Trustee with information and documents that he requested in October of the previous year. D.E. 24. The parties eventually resolved the Trustee's concerns and the Debtors' Chapter 13 plan was confirmed, as modified by the order that issued on May 18, 2020. D.E. 45.

Less than two months later, the Trustee filed his second motion to dismiss the Debtors' case alleging, among other things, that the Debtors were $3,365 delinquent in their plan payments and had failed to provide the Trustee with copies of their 2020 tax returns and any tax

1

refunds for that tax year. D.E. 48. The Debtor responded on August 11, 2021, asserting that they had lowered the arrearage to $1,991 and expected to pay off the arrearage within 6 months. D.E. 49. In addition, they filed a motion to approve the modification of their confirmed plan on August 16, 2021. D.E. 51. In December, the Trustee terminated the hearing on his second motion to dismiss, the Debtors having proposed a cure of the arrearages in their motion to modify, then pending for hearing. The Court subsequently denied the motion to modify, however, after concluding that proposed changes negotiated with the Trustee after the motion was filed were significant enough to require further notice to creditors. At the same hearing, the Debtors' counsel noted that the Debtors were then $1,488 in arrears on plan payments but indicated that they "should be able to . . . cure that over a reasonable time." D.E. 61. Rather than file a new motion to modify and noticing that out to creditors, the Debtors unilaterally determined, without notice to creditors or the Court, that they could cure the arrearages without the need for a plan modification. February 2022 came and went, however, and the Debtors not only failed to cure the arrearage but fell further behind.

The Trustee filed his third motion to dismiss on August 3, 2022. D.E. 64. This time he maintained that the Debtors were $2,252 delinquent on plan payments and that they failed to deliver to him copies of their 2021 tax returns and any excess refunds. The Debtors responded to the motion on August 29, 2022 admitting that they were $1,867 behind on plan payments. D.E. 65. At the September 7, 2022 hearing on the motion, the Trustee reported that the Debtors had provided him with copies of their 2021 tax returns and made payments in August but were still $1,667 delinquent. Counsel for the Debtors requested a continuance of 120 days to allow the Debtors to bring the plan current. The Court, mindful that a portion of the arrearages had been outstanding for well over a year and that the Debtors had made unfulfilled promises to bring the

plan current on prior occasions, did not continue the hearing for the requested 120 days but granted the Debtors a continuance until October 5, 2022.    The day before the October 5th hearing on the Trustee's third motion to dismiss, the Debtors filed a modified plan and a motion to modify their confirmed plan.  D.E. 68, 69. At the hearing held the next day, the Debtors' counsel conceded that the Debtors were still $1,667 in arrears though the Debtors represented to him that they had mailed a $900 money order to the Trustee and would send an additional $767 thus clearing up the arrearage.  The Trustee confirmed that he had not received the $900 money order and that the Debtors were $1,667 delinquent.  Notwithstanding the Trustee's willingness to permit the Debtors a short period of time to pay off the plan delinquency, the Court granted the Trustee's motion to dismiss.  The Debtor filed this Motion the next day.

**II.  Legal Standard.**

Although the Debtors did not specifically title the Motion as a motion to reconsider, that is what it is.  The Debtors want the Court to re-evaluate its order of dismissal, reverse it and reinstate the case.  The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, but they are generally evaluated through Fed. R. Civ. P. 59 (e) and 60 (b).  In re Poland, 2022 WL 1560414, at *1 (Bankr. D. Me. May 17, 2022); In re Getchell Agency, 2020 WL 6853276, at *1 (Bankr. D. Me. Oct. 8, 2020).  See also, In re Horned Dorset Primavera Inc., 2018 WL 4501117, at *4 (Bankr. D.P.R. Sept. 18, 2018).  Here, the Debtors seek relief under Fed. R. Civ. P. 60(b).  The First Circuit instructs that relief under this "rule should be granted sparingly" and, among other things, "a party who seeks recourse under Rule 60(b) must persuade the trial court, at a bare minimum,  . . . that exceptional circumstances exist, favoring extraordinary relief."  Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002).

3

**III. Discussion.**

After scouring the Motion, as well as the docket, the Court concludes that the Debtors did not meet the bare minimum; they have not established "exceptional circumstances" which favor "extraordinary relief."

They offer three arguments in support of reconsideration. First, they contend that the Court misconstrued their motion to modify "as a late, last-ditch effort to delay the administration of the case." D.E. 73, ¶ 18. In support of this argument, they attach an email exchange between their counsel and the Trustee. Putting aside the propriety of attaching such communications to motions, the Court's decision to dismiss the case did not hinge on the timing of the motion to modify. It is true that the Court would have been more sympathetic to a motion to modify filed as part of the legitimate administration of the case, but the Debtors have not complied with their plan since at least July of 2021. Failure to make timely plan payments in accordance with a Chapter 13 plan is grounds for dismissal under 11 U.S.C. § 1307(b). While it is true that this Court has permitted the occasional debtor, who has generally performed in Chapter 13, to catch up on arrearages without filing a motion to modify, that relief is only appropriate where the debtor can cure the arrearages within a short time from the filing of a motion to dismiss. Otherwise, debtors should file a motion to modify for several reasons. The longer a debtor goes without making payments in the amounts and on the schedule set forth in the original plan, the more that plan becomes divorced from reality. Due process requires giving creditors the opportunity to weigh in on a material change to the plan, such as alterations to the timing and amount of payments. The risk of a default too large to be cured within the term of the plan increases as the case moves toward the 60-month mark and the creditor body bears the weight of that risk while their collection efforts are held at bay by the automatic stay. They cannot

4

evaluate the extent of that risk without knowing exactly how a debtor intends to cure the default. Debtors must be held accountable where, as here, they conduct prolonged, and essentially undisclosed, plans for curing plan arrearages over an extensive period. It becomes difficult to weigh important concepts such as good faith and feasibility when the Trustee, the Court, and the creditors are unable to measure a debtor's performance because the measuring stick is in the shadows.

Second, the Debtors maintain that they should not be penalized so drastically for attempting to cure the arrearages in the most administratively efficient manner. The Court asks, however, who, besides the Debtors, have benefitted from their off-the-books efforts to cure their plan defaults? The Trustee has incurred the cost of filing three motions to dismiss in this case and the Court has had to review and prepare for all three. Moreover, the Court and the Trustee were left scrambling as motions to modify were twice filed on the eve of hearings on motions to dismiss. Perhaps the Debtors were saved the cost and aggravation of filing and noticing a new motion to modify (which they ended up doing, anyway) but is it fair for creditors, the Trustee and the Court to absorb the administrative inefficiencies created, initially, by the Debtors' failure to make timely payments under the plan and, later, multiplied by their unwillingness to abide by the statutory and procedural framework designed to cure those arrearages in a transparent and efficient manner? It is not. That framework provides the structure necessary to administer these cases and the Debtors failed to adhere to its basic requirements.

Finally, the Debtors argue that the Court should reconsider its decision to dismiss the case because they relied on the Trustee's directive to file a motion to modify the plan and in the Chapter 13 context "the Trustee represents the Court to most [d]ebtors . . . [and] at least appears to be the ultimate trier of fact and determines whether they can reorganize." D.E. 73, ¶ 23. This

5

is a fundamental misstatement of the bankruptcy process and the roles of the Chapter 13 Trustee and the judiciary.  The Court is alarmed to learn that <u>any</u> Chapter 13 debtor, let alone debtors represented by experienced counsel, believe the Trustee represents the Court or is the ultimate trier of fact and judge of whether debtors can reorganize.  The Trustee's duties and responsibilities are laid out in 11 U.S.C. § 1302, which incorporate 11 U.S.C. § 704(a)(2) - (7), (9) and 11 U.S.C. § 1106(a)(3), (4).   None of these sections empower the Trustee to act as, or on behalf of, the Court.  None grant the Trustee the authority to be the trier of fact or to determine whether a plan to reorganize must be granted.  Those are the functions of the Court.

**IV.  Conclusion.**

The Debtors' arguments do not show the existence of "exceptional circumstances" which favor "extraordinary relief."  The Court greatly appreciates the unique and important role played by the Chapter 13 Trustee but it is the Court's prerogative, not that of the Trustee, to determine whether a motion to dismiss should be granted.  The Court determined that dismissal was appropriate because the Debtors have been in default of their plan for more than one year and, despite numerous assurances they would cure the plan arrearages, they continue to remain in default under their plan. The Bankruptcy Code provides important protections to debtors but the price for those protections is transparency, disclosure, and accountability. The Debtors have not been held to any of these standards in connection with how and when they would make the monthly payments required by the confirmed plan.  The Court therefore denies the relief sought by the Motion.

Dated:  October 18, 2022              /s/ Peter G. Cary
                                      Judge Peter G. Cary
                                      United States Bankruptcy Court
                                      for the District of Maine